# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GREGORY FARRIS MARTIN,

           Petitioner,

v.                                             Case Number: 06-CV-12059

JOHN PRESLESNIK,

           Respondent.
                                 /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Gregory Farris Martin is a state inmate currently incarcerated at the Handlon Correctional Facility in Ionia, Michigan, pursuant to convictions for first-degree murder and felony firearm. He filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the court denies the petition.

## I. BACKGROUND

Petitioner's convictions resulted from the murder of his father, Robert F. Martin, who sustained a fatal gunshot wound to his thigh while in his home in Detroit, Michigan on November 27, 2002.

Dr. Francisco Diaz, a Wayne County Medical Examiner, testified that Martin died from a gunshot wound to the right upper thigh. The bullet hit the femoral artery and vein, causing massive bleeding. Dr. Diaz testified that the wound was not self-inflicted, and the gun was probably 18 to 24 inches from the victim's body when it was fired.

Police Officer Gregory Robson testified that he and his partner, Officer J. Jones, responded at about 11:30 p.m. on November 27, 2002, to a call about a man having

been shot. Upon entering Martin's apartment, Officer Robson found Martin lying on the floor, obviously dead. A gun that had been broken in two pieces was located near Martin's body. Officer Robson transported Petitioner to the police department.

Petitioner gave three custodial statements to police. Police Officer Natalie Reynolds interviewed Petitioner on November 28, 2002, at 1:45 a.m. She testified that Petitioner told her his father had slammed the gun on the floor like a hatchet, breaking the gunstock and shooting himself when the gun discharged. Petitioner told her that he called his fiancee and then called 911. Petitioner denied shooting his father.

Police Officer Charles Zwicker testified that he was the officer in charge of this case. He took a statement from Petitioner at 8:00 a.m. on November 28, 2002. Petitioner told Officer Zwicker that, on the night of the shooting, his father returned home intoxicated. Petitioner was talking on the phone to a friend. His father began yelling and arguing with him. When Petitioner attempted to calm him, his father threw a frying pan at him, hitting him in the head. Petitioner stated that he then hung up the phone. According to Petitioner, Martin began yelling about Petitioner's gun. He complained that it was not easily accessible to him in the event of an intruder. Petitioner told his father he could have Petitioner's gun. He reached under the couch and pulled it out. Petitioner told Officer Zwicker that he began taking the bullets out to empty the gun, but one of the bullets would not eject. Petitioner handed the gun to his father, who raised it over his head and slammed it against the floor. The gun discharged, striking Martin. Petitioner said he briefly blacked out and when he awoke called a friend and advised her to call 911, then called 911 himself.

Approximately two hours later, Petitioner gave a third statement to police. Police Officer Lance Newman testified that Petitioner told him that he was talking to his girlfriend on the phone when his father returned home. His father began hollering about a fight he had gotten into with a friend. Apparently unprovoked, his father threw a frying pan at him. Petitioner hung up the phone. Martin asked where the shotgun was. Petitioner reached under the couch and began unloading the shells. He was having difficulty unloading the shells, so he began shaking the gun in an attempt to eject a jammed shell. The gun then discharged, and a bullet struck his father. Petitioner sat on the couch for an hour or so, then called his girlfriend and 911.

William Steiner testified as an expert witness on gunshot residue. He testified that he performed testing on four samples taken from Petitioner's hands and found gunshot residue on three of the four samples.

Officer Scott Pessina testified as an expert witness in firearm identification and explosive disposal. He testified that he tested the murder weapon to determine if it could be accidentally discharged from a drop of three to six feet. He determined that the weapon did not discharge during testing and that it performed properly after testing.

Robert Hardwick, a paramedic with the Detroit Fire Department, EMS Division, testified that he responded to the shooting at Martin's house. Petitioner met him outside the apartment building and appeared to want to delay opening the apartment door for Hardwick and police. Hardwick testified that Petitioner finally opened the door only after being ordered to do so by police.

Petitioner testified in his own defense. He testified that he suffers from a seizure disorder. On the night of the shooting, his father was intoxicated and agitated. His

3

father asked him where the shotgun was. Petitioner decided to unload the gun before handing it to his father. He could not unload one of the shells and handed the gun to his father. Petitioner testified that, after handing the gun to his father, he sat down because he was not feeling well. Petitioner observed his father holding the shotgun by the barrel and slamming the gun on the floor. The gun discharged. Petitioner testified that he then had a seizure and lost consciousness.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree murder and possession of a firearm during the commission of a felony. On February 21, 2003, he was sentenced to life imprisonment without the possibility of parole for the murder conviction, and two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

   I.   The evidence presented at trial was insufficient to convict the Appellant of first degree murder.

   II.  The prosecution's closing argument improperly shifted the burden of proof, attacked trial counsel, set forth a personal belief in guilt, and argued facts not of record, thereby denying the Appellant a fair trial.

The Michigan Court of Appeals affirmed the convictions. *People v. Martin*, No. 248158 (Mich. Ct. App. Aug. 10, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The court denied leave to appeal. *People v. Martin*, 472 Mich. 930 (Mich. June 17, 2005).[1]

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims presented on direct appeal in state court.

## II. STANDARD

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state

---

[1] Three of the Supreme Court Justices dissented. They would have vacated the first-degree murder conviction because insufficient evidence was presented to show premeditation and remanded to the trial court for entry of a judgment of conviction of second-degree murder.

court factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable

---

[2] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

6

application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

When "no state court addresses a properly raised federal claim," a federal court is "no longer bound by AEDPA's deferential standard of review and instead review[s] the claim de novo." *Williams v. Haviland*, 467 F.3d 527, 530 (6th Cir. 2006).

## III. DISCUSSION

### A. Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented at trial to sustain his conviction for first-degree murder because the element of premeditation was not established beyond a reasonable doubt.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by

7

state law." *Id*. at 324 n.16. Pursuant to 28 U.S.C. § 2254(d)(1), this court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent.

The last state court to issue a reasoned opinion addressing this claim, the Michigan Court of Appeals, held, in pertinent part:

> In determining whether sufficient evidence has been presented to sustain a conviction, an appellate court is required to view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Jaffray*, 445 Mich. 287, 296; 519 N.W.2d 108 (1994).
>
> In order to convict a defendant of first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v. Ortiz*, 249 Mich. App. 297, 301; 642 N.W.2d 417 (2002). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem…[P]remeditation and deliberation characterize a thought process undisturbed by hot blood." *People v. Plummer*, 229 Mich. App. 293, 300; 581 N.W.2d 753 (1998), quoting *People v. Morrin*, 31 Mich. App. 301, 329-331; 187 N.W.2d 434 (1971). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *People v Marsack*, 231 Mich. App. 364, 370-371; 586 N.W.2d 234 (1998). And, premeditation and deliberation may be established by evidence of the prior relationship of the parties, the defendant's actions before the killing, the circumstances of the killing itself, and the defendant's conduct after the homicide. *People v Abraham*, 234 Mich. App. 640, 656; 599 N.W.2d 736 (1999).
>
> In this case, the evidence showed that defendant and his father had a prior relationship characterized by his father's frequent rantings and ravings. This evidence supports an inference of premeditation and deliberation insofar that it shows that defendant had a motive to kill his father. Regarding the circumstances of the killing, defendant admitted that he hid the gun under the couch where he was lying immediately before the shooting. The evidence also permitted an inference that a sufficient amount of time elapsed before defendant reached under the couch to get the gun and, thus, had sufficient time to contemplate his actions and take a second look. Defendant's post-homicide conduct also supports a finding of premeditation and deliberation. The evidence permitted the jury to

8

> conclude that defendant attempted to conceal the crime by deliberately breaking the gun and then fabricating a story about an accidental shooting. An attempt to conceal a killing may support a finding of premeditation and deliberation. *People v. Gonzalez*, 468 Mich. 636, 641; 664 N.W.2d 159 (2003); *People v. Haywood*, 209 Mich. App. 217, 230; 530 N.W.2d 497 (1995). The evidence also indicated that defendant delayed calling 911, and then stalled when help finally arrived.
>
> Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant premeditated and deliberated the fatal shooting of his father.

*Martin*, slip op. at 1-2.

The Michigan Court of Appeals, although not citing *Jackson*, cited case law which clearly incorporated the *Jackson* standard. Petitioner has not presented any evidence to show that the state court's findings of fact were erroneous. The standard under which habeas review is conducted, of course, is not whether this court would or would not determine the premeditation element proven beyond a reasonable doubt. A court on habeas review does not have, among other things, the benefit of observing witnesses' demeanor and assessing their credibility. *See Gall v. Parker*, 231 F.3d 265, 307 (6th Cir. 2001), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003) (a trial court's assessment of credibility is generally beyond the scope of habeas review).

According the state court's findings of fact a presumption of correctness, this court concludes that the Michigan Court of Appeals' decision that a rational trier of fact could have found the premeditation element was proven beyond a reasonable doubt did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

## B. Alleged Prosecutorial Misconduct

In his second claim for habeas relief, Petitioner argues that the prosecutor engaged in several acts of misconduct during her closing argument. Specifically Petitioner alleges that the prosecutor improperly shifted the burden of proof, attacked defense counsel, expressed her personal belief as to Petitioner's guilt, and argued facts not in the record.

Respondent argues that the prosecutorial misconduct claims may not be considered by this court because they are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the court finds that the interests of judicial economy are best served by addressing the merits of the prosecutorial misconduct claims.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605

(6th Cir. 1982). The court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has identified the factors a court should consider in weighing the extent of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 964 (*quoting Angel,* 682 F.2d at 608).

First, Petitioner claims that the prosecutor improperly shifted the burden of proof to the defense by pointing out that Petitioner failed to present any records to substantiate his testimony that he was hospitalized after giving his third custodial statement. "[W]here a defendant testifies at trial and advances an alternative theory of the case that would exonerate him from the crime, prosecutorial comments on the validity of the theory do not shift the burden of proof to the defendant." *Traylor v. Price*, 239 Fed. App'x 235, 239 (6th Cir. 2007). Indeed, in this case the prosecutor was careful to point out to the jury specifically that a defendant does not bear the burden of proof,[3] but argued that the jury was nevertheless free to consider the quality of the testimony presented by the defense. The Michigan Court of Appeals held that the prosecutor's comment was simply a comment on the validity of Petitioner's defense, not

---

[3] The prosecutor argued, in rebuttal, "I have the burden of proof[;] they don't have to prove anything. Counsel didn't have to address you, he didn't not [sic] have to put the defendant on the stand." (Tr. 2/20/03, p. 97)

11

an attempt to shift the burden of proof.  The court finds that the state court's conclusion was not contrary to or an unreasonable application of Supreme Court precedent.

Second, Petitioner argues that the prosecutor improperly suggested that defense counsel was attempting to mislead the jury.  The prosecutor urged the jury to focus on the elements of the crime rather than on what the prosecutor characterized as tangential issues designed to distract the jury.  The court has reviewed the closing argument and finds that the prosecutor did not denigrate defense counsel.  Instead, she highlighted the weaknesses in the defense and argued that these weaknesses rendered the defense theory unbelievable.[4]  The prosecutor's arguments were reasonable arguments designed to persuade the jury to the prosecutor's theory of the case.

Third, Petitioner argues that the prosecutor expressed a personal belief in Petitioner's guilt.  "[A] prosecutor may not express a personal opinion concerning the guilt of a defendant . . . because such personal assurances of guilt . . . exceed[] the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof."  *Caldwell*, 181 F.3d at 737.  However, "a state's attorney is free to argue that the jury should arrive at a particular conclusion based on the record evidence, including the conclusion that the evidence proves the defendant's guilt."  *Id.*  The Michigan Court of Appeals held that the prosecutor did not state her personal belief as to Petitioner's guilt; instead, she argued that the evidence presented supported a guilty verdict.  This court finds nothing to support a conclusion of an improper "personal belief" argument, and agrees with the

---

[4] The prosecutor emphasized particularly in argument that the defendant was "a manipulative liar."  (Tr. 2/20/03, p. 97)

12

state court's assessment. Therefore, habeas relief is denied on this prosecutorial misconduct claim.

Finally, Petitioner argues that the prosecutor engaged in misconduct by arguing facts not in evidence. In particular, the prosecutor argued that there was no gunshot residue on the victim. Petitioner claims that no testimony supported this statement. In fact, the medical examiner testified that he found no gross evidence of gunshot residue on the victim's body. The state court held that the prosecutor's arguments were reasonable inferences based upon the testimony presented. The court finds that, in light of the medical examiner's testimony, the state court's conclusion was not contrary to or an unreasonable application of Supreme Court precedent and denies relief on this claim.

## C. CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901, (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997)), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that

point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted.[5] Therefore, the court denies a certificate of appealability.

### IV. CONCLUSION

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

s/Robert H. Cleland

---

[5]The court recognizes that three Justices of the Michigan Supreme Court dissented from the majority opinion to deny leave to appeal. *See Martin*, 472 Mich. at 930. This, however, does not mean that the majority opinion or, more importantly, the underlying court of appeals decision was an unreasonable application of United States Supreme Court law. Nor does it mean, in this case, that reasonable jurists would disagree that such opinions were *unreasonable.*

ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 26, 2007, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\06-12059.MARTIN.DenyHabeas.mbc.2.wpd